IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DAINA H. CARRUTHERS, | ) CIVIL ACTION 4:05-975-TLW-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

  This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I.  PROCEDURAL HISTORY

  The plaintiff, Daina H. Carruthers, filed applications for DIB on November 21, 2002, and (SSI) on November 21, 2002, alleging inability to work since January 19, 2002, due migraine headaches, vertigo, and right ear ringing, pressure, and pain, and unable to concentrate (Tr. 56, 62, 463). Her applications were denied at all administrative levels, and upon reconsideration (Tr. 33-38,

41-43). The Administrative Law Judge (ALJ), Richard L. Vogel, issued an unfavorable decision on May 28, 2004, finding plaintiff was not disabled within the meaning of the Act (Tr.14-29). The Appeals Council denied plaintiff's request for review (Tr. 6-8), thereby making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in a Complaint filed on March 30, 2005, pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

The plaintiff, Daina H. Carruthers, was born February 13, 1951, (Tr. 56, 463), and was 53 years old at the time of the ALJ's decision. (Tr. 56, 463). She has one year of college education and past work experience as a hospital admissions clerk, a car rental agent, an appointment clerk, an operator, a secretary, a payroll clerk, and a telephone concert ticket salesperson (Tr. 18, 63, 68).

## III. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

> (1) The ALJ erred in rejecting the Residual Functional Capacity Assessment of treating Psychiatrist Fahy.
>
> (2) The testimony of the vocational expert is at odds with the job descriptions contained in the Dictionary of Occupational Titles and the discrepancy erroneously went unexplained.

(Plaintiff's brief).

In the decision of May 28, 2004, the ALJ found the following:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.   The claimant has not engaged in substantial activity since the alleged onset of disability.

3.   The claimant's vertigo, fibromyalgia, depression, and anxiety are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.   The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant has the ability to perform a significantly range of light work activity. Specifically, the claimant has the capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can walk, sit, and stand each for six hours in a normal 8-hour workday. She is restricted to no climbing, no crawling, no balancing, no repetitive find manipulation bilaterally, no exposure to hazards, and no exposure to crowds. Her job requirements must consist of simple, repetitive one and two step tasks in a low stress, non-sequential production setting. The claimant is further restricted to a job with a sit/stand option and infrequent overhead reaching with the non-dominant arm.

7.   The claimant is unable to perform any of her past relevant work (20 CFR §§404.1565 and 416.965).

8.   The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963).

9.   The claimant has "more than a high school education" (20 CFR §§ 404.1564 and 416.964).

10.  The claimant has no transferable skills from any past work and/or transferability to skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11.  The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

> 12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a parking lot attendant, a tobacco sampler, and as a storage facility clerk.
>
> 13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 28-29).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

4

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of

5

disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

### IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.

Evidence relevant to plaintiff's claim reveals that plaintiff was seen in 2001 in the Emergency Room at the Veterans Administration (VA) medical facility, complaining of chest pain and dizziness. Her cardiac work up was negative and an MRI was normal. She was diagnosed with ankle pain, major depressive disorder with anxiety, costochondritis, and vertigo. Plaintiff continued to be treated at the VA with complaints of dizziness, headaches, wrist pain, ankle pain, and ear pain.

Because of continued ear pain, a CT scan of the ear and temporal bone was taken on April 5, 2002, which showed some thickening of the right membrane without external or middle ear abnormalities. (Tr. 366). Her ear pain and sense of disequilibrium continued as of May 30, 2002, and she was prescribed Oxycodone. (Tr. 358). A hearing test revealed no abnormalities. (Tr. 355). On October 18, 2002, she reported that she lives with pain in her ear everyday with a level 4-5 and

terrible pain when it pops. (Tr. 322). She reported that the pain is accompanied by dizziness. (Tr. 322). On December 6, 2002, plaintiff presented with right ear pain stating she had chronic pain all of the time accompanied by dizziness. She was prescribed OxyContin and on December 20, 2002, her medication was changed to Methadone. She was seen on January 13, 2003, and March 4, 2003, with pain in her ear.

On March 27, 2003, plaintiff was evaluated by Dr. Dale Tabor, director of the Pain Center, for further evaluation of ear pain, ringing sound and dizziness. (Tr. 259-260). The physical exam revealed mild obesity, some overt signs of anxiety, and complaints of pain in various joints during the exam, but with distraction, there was no pain reported in similar areas on reexamination. (Tr. 260). Dr. Tabor diagnosed ear pain, probable mild myofascial pain syndrome, and mild anxiety. He prescribed several medications. On April 4, 2002, plaintiff requested further refills of pain medication but was denied feeling that she may have developed tolerance or addiction. (Tr. 244-248). On April 24, 2003, plaintiff was given bilateral wrist splints for flare-ups from fibromyalgia and was given crutches. (Tr. 226).

Plaintiff began treatment with Dr. Richard Fahy, a psychiatrist, in 2000 for depression and saw him about every three months. In the office notes of March 11, 2002, Dr. Fahy noted that plaintiff's depressive disorder appeared to have settled to a dysthymia as she appeared more stable and emotionally grounded than she had been. (Tr. 375). On June 12, 2002, Dr. Fahy reported that plaintiff "now represented a dysthymic depression in response to Sertraline, Trazodine and BuSpar. Emotionally she is doing well and reasonably stable." However, her ear was still bothering her. (Tr. 354).

On May 6, 2003, plaintiff was seen by Dr. Fahy who described her as a patient with depressive disorder and a highly hystrionic personality. He noted that plaintiff was in a tearful hystronic state indicating the terrible discomfort and pain she experiences with her right ear. Dr. Fray noted that she did not describe depression but focused on her physical problems also describing abdominal pain and daily diarrhea which had been going on for weeks. He noted that her most recent GAF was assessed at 60 and he gave a small increase in her dosage of Darvocet for pain.

On January 7, 2004, plaintiff's treating psychiatrist, Dr. Fahy, completed a Psychiatric/Psychological Impairment Questionnaire in which he stated that he began treating plaintiff on June 9, 2000, and had last seen her on October 29, 2003. He stated that he saw her about every three months. He stated that he treated her for dysthymic depression, generalized anxiety disorder, and histronic personality disorder. He noted that her current global assessment functioning level was 50. Dr. Fahy reported that the plaintiff had a poor prognosis and listed the following clinical findings: poor memory, appetite disturbance, with weight change, sleep disturbance, personality change, mood disturbance, emotional liability, feelings of guilt/worthlessness, difficulty thinking or concentration, suicidal ideation or attempts, time or place disoriented, social withdrawal or isolation, decreased energy, general persistent anxiety, somatization unexplained by organic disturbance, hostility and irritability, and pathological dependence or passivity. Dr. Fahy reported that her primary symptoms included pervasive anxiety with sleep disorder, depression with suicidal ideation, and migraine headaches. Dr. Fahy reported that plaintiff was markedly limited in the following areas: ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain ordinary routine without supervision; work with or near

others without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms or the need for unreasonable rest periods; accept instructions and respond appropriately to criticism; respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently. Dr. Fahy further reported that the plaintiff was moderately limited in the following: ability to remember locations and work-like procedures; understand and remember one or two-step instructions; carry out one or two-step instructions; and get along with co-workers without distracting them or exhibiting behavioral extremes. Dr. Fahy concluded that plaintiff's chronic headaches were markedly limiting, and he stated that high anxiety causes her to decompensate in response to stress which is complicated by her depression. Dr. Fahy found that plaintiff's condition would last more than twelve months and she was not a malingerer. He found that her prognosis is poor, that all evaluations were based on clinical observations, and that she could tolerate low stress but would likely be absent from work more than three times a month as a result of her impairments and having good days and bad days. (Tr. 202-209).

On February 18, 2003, Lisa Smith Klohn, Ph.D., a State agency non-examining psychologist, determined plaintiff had no significant limitations in her abilities to remember locations and work-like procedures, understand, remember, and carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting

9

behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and that she had moderate limitations in her abilities to understand, remember, and carry out detailed instructions, maintain concentration and attention for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public (Tr. 167-168).

On February 28, 2003, Richard Weymouth, M.D., a State agency non-examining physician, determined that plaintiff had no exertional, postural, manipulative, visual, communicative, or environmental limitations, with the exception of a limitation from concentrated exposure to hazards (Tr. 144-151).

On July 29, 2003, a second State agency clinical psychologist determined plaintiff had no significant limitations in her abilities to remember locations and work-like procedures, understand, remember, and carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar

places or use public transportation, and set realistic goals or make plans independently of others; and that she had moderate limitations in her abilities to understand, remember, and carry out detailed instructions, maintain concentration and attention for extended periods, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Tr. 184-185).

On August 1, 2003, a second State agency physician determined plaintiff had no exertional, postural, manipulative, visual, communicative, or environmental limitations, with the exception of limitations from climbing ladders, ropes, or scaffolds, or concentrated exposure to hazards (Tr. 177-180).

## V. TESTIMONY

At her hearing on April 1, 2004, plaintiff testified she experienced fibromyalgia (Tr. 516, 520-521), bilateral hand and finger arthritis, right worse than left (Tr. 518-520), right ear, bilateral ankle, bilateral shoulder, back, and lower extremity pain (Tr. 512-514, 517, 519-523), migraine headaches (Tr. 528), dizziness (Tr. 513-514), and an anxiety disorder (Tr. 516-517). She also testified she is right hand dominant (Tr. 518). She was wearing a splint on her right hand at the time of the hearing. (Tr. 518). Plaintiff testified that she has pain in her shoulder and has not been able to use it for the last two months. (Tr. 519). Plaintiff testified that she can sit for about an hour and that she has a problem with diarrhea. She stated that she goes to the bathroom eight or nine times a day. (Tr. 523-524). Plaintiff testified that she can stand continuously for about an hour, can walk for a half hour and can lift about five to ten pounds. Plaintiff testified that she can do just one job at a

time and it usually will take her all day just to do the laundry. (Tr. 526). Plaintiff testified that she has to carry her husband along with her to the grocery store to carry and "grab everything." (Tr. 527). She further testified she had "a hard time with people" (Tr. 528), and concentration difficulty (Tr. 532). Plaintiff also testified that she goes to the VA facility in Myrtle Beach and had 205 admissions to the clinic in three years. Plaintiff testified that she and her husband do not have a normal type of social life because she is very limited in going out. (Tr. 530). Plaintiff testified that they do go to church and she mows her front lawn which is not very large so it only takes fifteen (15) minutes and her husband does everything in the back yard. Plaintiff testified that a combination of things keep her from working but especially her concentration. (Tr. 531). Plaintiff testified that she does puzzles where you circle the word but is not capable of doing word puzzles or crossword puzzles. (Tr. 532). Plaintiff also testified that she had notes at the hearing to help her remember things such as her past work, etc. (Tr. 532).

Arthur F. Schmitt, Ph.D., a VE, testified that, considering an individual of plaintiff's age, education, past relevant work experience, and residual functional capacity (RFC) for light work[1] reduced by limitations of no more than infrequent overhead reaching with the left arm; no more than simple, repetitive one and two-step tasks; no climbing, crawling, balancing, bilateral repetitive fine manipulation, exposure to hazards, or exposure to crowds; and no work not allowing a sit/stand option or a low stress, nonsequential production settings, jobs existed in the regional and national economies which such an individual could perform. He cited parking lot attendant, tobacco sampler, and storage facility clerk as examples, and provided the incidence of these jobs in the regional and

---

[1] Light work involves sitting two hours and walking and standing six hours in an eight-hour workday, and lifting no more than 20 pounds at a time. See 20 C.F.R. §§ 404.1567(b), 416.967(b) (2005); Social Security Ruling (S.S.R.) 83-10.

national economies (Tr. 535). Upon cross examination by plaintiff's attorney, the VE testified that based on the report of Dr. Fahy, plaintiff would not be able to perform the jobs he had listed because of a marked disruption of the normal work week and marked attendance and punctuality problems. (Tr. 536).

## VI.  ANALYSIS

As set out above, the ALJ found in his decision dated May 28, 2004, that plaintiff had "severe" vertigo, fibromyalgia, depression, and anxiety, but that she did not have an impairment or a combination of impairments listed in or medically equal to one listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  He also found that plaintiff's subjective complaints were not totally credible.  He further found that plaintiff retained the RFC to perform light work reduced by limitations of no more than infrequent overhead reaching with the non-dominant (left) arm; no more than simple, repetitive one and two-step tasks; no climbing, crawling, balancing, bilateral repetitive fine manipulation, exposure to hazards, or exposure to crowds; and no work not allowing a sit/stand option or a low stress, non-sequential production setting.  The ALJ determined that, although plaintiff could not perform her past relevant work, in light of VE testimony and other evidence of record, there was a significant number of jobs in the national economy plaintiff could perform, given her particular limitations. Therefore, plaintiff was found not disabled (Tr. 27-29).

Several reports were submitted to the Appeals Council after the hearing. These reports include medical records from Georgetown Memorial Hospital, medical records from the Department of Veterans Affairs dated November 23 to December 3, 2004, and a report from Daniel A. Falk. (Tr. 471-494).

The Appeals Council stated in its decision that the additional evidence was considered but found that the information does not provide a basis for changing the ALJ's decision. (Tr. 6-7).

When evidence not considered by the ALJ is submitted to the Appeals Council and is incorporated into the record, the reviewing court must consider this evidence in determining whether the Commissioner's decision is supported by substantial evidence. Hart v. Apfel, No. 98-2320. 1999 WL 365555, at *3 (4th Cir. June 7, 1999) [unpublished opinion]. However, in conducting its review, the District Court is to determine whether substantial evidence supports the Commissioner's decision, and in order to conduct such a review it is necessary to have some knowledge of the basis for that decision, especially when additional items of evidence were presented to the Appeals Council that the ALJ did not have before him. "A bald conclusion unsupported by reasoning or evidence, is generally of no use to a reviewing court." Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978)[published decision]. In the Jordan case, a coal miner was seeking benefits in a black lung disease claim. The claimant lost at the administrative hearing before the ALJ and appealed the decision to the administrative Appeals Council and submitted additional evidence. The Appeals Council stated only that the additional evidence had been considered and summarily affirmed the denial of benefits. The Fourth Circuit reversed the Appeals Council's decision in light of the inadequacy of the explanation given for rejection of the additional evidence submitted for its consideration. The Fourth Circuit stated:

> Several new items of medical evidence, not all of it favorable to Jordan, were submitted to this body . . . stating only that the additional evidence had been considered, the appeals council summarily affirmed the denial of benefits . . . Before we determine the substantiality of the evidence to support the administrative determination, we must first ascertain whether the Secretary has discharged his duty to consider all relevant evidence. A bald

> conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious. This case is not within the exception. Moreover, conclusory administrative determination may conceal arbitrariness. To eliminate these problems, we held in Arnold v. Secretary, "that the Secretary, in determining an applicant's entitlement to black lung benefits, must consider all relevant evidence, including that accumulated after June 30, 1973, and must indicate explicitly that such evidence has been weighed and its weight." 567 F.2d at 259. We think the opinion of the appeals council, stating as it did only that the additional evidence had been considered, was plainly deficient under Arnold. The November 1975 x-ray and the second physician's report sufficiently supported the existence of a qualifying disability to require that the Secretary explain why they were not persuasive. We therefore reverse and remand the case to the district court for the purpose of returning it to the Secretary with directions to give this claim adequate consideration and to articulate his conclusions with respect thereto.

(Jordan, 582 F.2d at 1334-1336).

There is contrary authority on this issue. In the case of Hollar v. Commissioner of the Social Sec. Admin. 194 F.3d 1304 (4th Cir. (N.C.)1999) [unpublished decision], the plaintiff sought review from the Appeals Council after the ALJ reached his decision denying her benefits. Hollar submitted additional evidence which the Appeals Council considered and found did not provide a basis for changing the ALJ's decision. Plaintiff then appealed complaining that the Appeals Council failed to consider and make explicit findings concerning the evidence submitted in support of her claim after the ALJ's decision. A panel of the Fourth Circuit held that "the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision." The Fourth Circuit referred to the applicable CFR, 20 C.F.R. § 404.970(b) (1999), which does not mandate that the Appeals Council give explicit reasons for its decision.

However, there has been a decision relevant to the issues in this case, Harmon v. Apfel, 103 F. Supp.2d 869 (D.S.C. 2000), by United States District Judge David C.Norton.  In Harmon, the plaintiff sought judicial review of the Commissioner's decision and had submitted additional evidence to the Appeals Council not considered by the ALJ. The Appeals Council considered the additional evidence but found it did not suffice as a basis for changing the ALJ's decision without stating its reason for its conclusion.

Quoting from Judge Norton's decision in Harmon, supra,

> The court must attempt to steer its analytical ship between the twin perils of Scylla and Charybdis[2].  The court is caught between trying to provide meaningful judicial review of evidence not considered by the fact finder, while avoiding actually performing the task of weighing and resolving conflicts in the evidence, which is, of course, the function of the ALJ.  Specifically, in this modern-day version of the classic Greek tale, Scylla represents any violation of the Fourth Circuit's rule that when evidence not considered by the ALJ is submitted to the Appeals council and is incorporated into the record, the reviewing court must also consider this evidence in determining whether the Commissioner's decision is supported by substantial evidence.  See Wilkins v. Secretary, Dep't of Health and Human Sevs., 953 F.2d 93, 96 (4th Cir. 1991).  By attempting to adhere to such a rule when the Appeals Council fails to articulate the reasons why the new, additional evidence does not suffice as a basis for changing the ALJ's decision, this court is drawn perilously close to Charybdis, which represents any violation of the Fourth Circuit's rule that the Commissioner must indicate explicitly the weight of all relevant evidence because it is not within the province of a reviewing court to determine the weight of the evidence.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). . . This court is not a soothsayer

---

[2] In Homer's Odyssey, Odysseus and his men had to wage battle against monsters such as Scylla and Charybdis and overcome other apparently insurmountable obstacles during the course of their voyage.  Scylla was a multi-headed female monster, personifying a dangerous rock on the Italian side of the Straits of Messina.  Charybdis was a creature whose daily consumption of the sea created the whirlpool off the Northeastern coast of Sicily, in the Straits of Messina.  Because these creatures lived opposite shores of a narrow strait, it was supposedly impossible to navigate away from one peril without falling prey to the other.

>and cannot base its conclusion on surmise and conjecture as to the reasons the Commissioner disregarded the new, additional evidence presented to it. Unless the commissioner has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. Arnold v. Secretary of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977).

Judge Norton held that, quoted verbatim:

>In summary, although the Appeals Council's decision whether to grant or deny review of an ALJ's decision may be discretionary as well as unreviewable, and the regulations do not require the Appeals Council to articulate a reason for its decision not to grant review, a reviewing court cannot discharge its statutory function of determining whether the findings of the Commissioner are supported by substantial evidence when the Appeals Council considered evidence that the ALJ did not have the opportunity to weigh, and rejected that new, additional evidence without specifying a reason for rejecting it or explicitly indicating the weight given to the evidence.

Harmon at 873.

Judge Norton addressed the Hollar decision, previously noted herein, which is contrary to his position, in his Order stating that "Because this court is not convinced by the Hollar panel's perfunctory analysis, the court declines to follow the unpublished opinion."Id. at 872. Judge Norton noted that "by definition, an unpublished opinion is not binding precedent. See U.S. Ct. of App. 4th Cir. Rule 36(c)." Judge Norton remanded the Harmon case, under a sentence four remand, to the Commissioner to articulate and state reasons for his assessment of the additional evidence presented by the plaintiff. Judge Norton concluded this was necessary so that the District Court could properly determine whether the Commissioner's decision is supported by substantial evidence.

17

Records submitted from the VA to the Appeals Council, reveal that plaintiff was seen on several occasions due to her depression and anxiety. In one report it states that plaintiff presented with suicidal ideations for three months, that she suffers with depression, panic attacks, chronic diarrhea, fibromyalgia, tinnitus, restless legs and that years of Zoloft treatment had failed. (Tr. 476). Plaintiff reported that she did not want to live anymore and the rushing sound in her right ear "drives me crazy." Again, she was diagnosed with panic disorder depression, possible somatization disorder, and social phobia along with the fibromyaliga. (Tr. 486). As stated above, the plaintiff argues that the ALJ erred in rejecting the residual functional capacity assessment of the treating psychiatrist, Dr. Fahy. Further, reports from a chiropractor, Dr. Falk, that she was seeing due to her fibromyalgia and pain were submitted and considered by the Appeals Council.

The Appeals Council did not state its reasons for concluding that the additional evidence failed to provide a basis for reversing the decision of the ALJ. The Appeals Council issued its decision stating a conclusion only. That procedure is arguably insufficient to enable a reviewing District Court "to discharge its statutory function of determining whether the findings of the Commissioner are supported by substantial evidence." Harmon, supra. As set forth, the Jordan decision, a published opinion, requires explicit findings by an Appeals Council in a black lung claim. The undersigned also notes that the Hollar decision (unpublished) and 20 C.F.R. § 404.970(b) does not require the Appeals Council to announce detailed reasons for its findings. However, in light of the Jordan decision and the analysis in Harmon, the undersigned finds Judge Norton's decision persuasive. Therefore, the undersigned recommends, based on the holdings in Harmon and Jordan, supra, as discussed above, that the plaintiff's case should be remanded under sentence four of 42 U.S.C. § 405(g) so that the Commissioner may indicate explicitly if the evidence was considered

18

why the new, additional evidence does not suffice as a basis for changing the ALJ's decision. The Commissioner should consider the additional evidence and, if it finds that this additional evidence does not suffice as a basis for changing the ALJ's decision, the Order should explicitly indicate the reason. The District Court will then be in a position to determine whether or not the Commissioner's decision is supported by substantial evidence. As the undersigned is recommending a remand as set forth above, the arguments of the plaintiff will not be addressed at this time because the undersigned cannot address whether or not there was substantial evidence to support the decision of the ALJ and the Appeals Council.

## VII.  CONCLUSION

Based on the above, the undersigned RECOMMENDS that the Commissioner's decision be REMANDED PURSUANT TO SENTENCE FOUR for further administrative action as set out herein.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 16, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503